# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF GEORGIA

# ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAR 3 0 2026

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

SETH RUSEK,

Plaintiff,

v.

**Civil Action File**

No.: _1:26-CV-1698_

COBB COUNTY, GEORGIA,

Defendant.

# COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND

# MONETARY RELIEF

Plaintiff brings this civil rights action arising from Cobb County Code Enforcement's refusal to engage in a lawful accommodation review after Plaintiff disclosed disability and requested a time-only accommodation. Plaintiff seeks declaratory and injunctive relief to require ADA/FHA-compliant accommodation procedures and monetary relief for consequential harms.

## I. JURISDICTION AND VENUE

1. This action arises under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq., and the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq.

2. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in this District under 28 U.S.C. § 1391 because the events giving rise to these claims occurred in Cobb County, Georgia.

## II. PARTIES

4. Plaintiff is an adult resident of Cobb County, Georgia, and the owner/occupant of a dwelling located at 2153 Spencer Court, Marietta, GA 30066 (the "Property").

5. Plaintiff is a qualified individual with a disability within the meaning of the ADA and FHA, with severe spinal impairment and mobility limitations that substantially limit major life activities including walking, standing, lifting, bending, and stair navigation.

6. Defendant Cobb County, Georgia ("Cobb County") is a public entity within the meaning of ADA Title II, 42 U.S.C. § 12131(1), and administers code enforcement as a County service, program, and/or activity.

7. Code enforcement activities constitute services, programs, or activities of a public entity within the meaning of ADA Title II. 42 U.S.C. § 12131(2).

## III. FACTUAL ALLEGATIONS

8. In or about January 2026, Cobb County Code Enforcement issued notice(s) alleging ordinance violations at the Property, including (a) alleged vehicles "without tags," and (b) alleged "storing items outside."

9. On January 12, 2026, Plaintiff responded by email, disclosed disability and functional limitations, and requested a reasonable accommodation consisting solely of additional time and a safe compliance schedule (a "time-only accommodation"). Plaintiff did not request waiver of any ordinance.

10. On January 13, 2026, Code Enforcement Supervisor Yolisa Foston responded in writing: "We do not make accommodations on the ordinance," and directed Plaintiff to pursue zoning/board processes.

11. The County did not request medical verification or clarification and did not initiate any interactive accommodation review or meaningful assessment of Plaintiff's request.

12. The County further stated that any extension would be granted only if "effort is observed" or "progress" is observed at inspection—conditioning relief on physical activity by Plaintiff despite the disclosed disability.

13. On January 20, 2026, Plaintiff advised the County that cleanup had already begun, clarified that conditions were not visible from the street, and reiterated that the request was time-only to avoid injury.

14. On January 20, 2026, the County responded that the officer would inspect and that all vehicles must display current tags if outside the garage, and all items must be stored within an enclosed structure, while acknowledging pine straw/leaves were not violations.

15. On February 18, 2026, the County escalated enforcement and stated that citations would issue if alleged violations were not corrected by March 5, 2026.

16. Between February 18 and March 5, Plaintiff was in town only approximately 1.5 days over weekends due to work obligations, with one day constrained by a religious day of rest. Government offices were not open on Sunday to obtain replacement tags, and Plaintiff's physicians scheduled MRI imaging in the intervening week to assess damage caused when complying with mandatory progress, requiring Plaintiff to avoid further exertion.

17. Plaintiff's Property conditions were materially compliant as follows: (a) all vehicles were on the driveway/hardened surface; (b) alleged trash/loose items were removed; and (c) the County acknowledged pine straw/leaves were not violations.

18. Under threat of citation and without an accommodation process, Plaintiff undertook exertional lifting/bending activity in cold conditions to demonstrate "progress."

19. After these efforts, Plaintiff developed new and persistent left-sided sciatic pain and radiculopathy, with reduced mobility and diminished ability to use and enjoy the Property (including stair navigation in a multi-level home).

20. Subsequent medical evaluation and imaging demonstrate lumbar pathology consistent with worsening left-sided radiculopathy compared to prior imaging, together with clinical correlation supporting aggravation of Plaintiff's pre-existing lumbar condition following exertion. Plaintiff expects to submit treating-physician opinion testimony and/or declaration further addressing medical causation.

21. Plaintiff continues to experience persistent left-sided radicular pain and functional limitation that substantially impairs mobility, sleep, and daily living activities. Continued enforcement pressure without accommodation risks further physical injury and irreparable harm that cannot be adequately remedied through monetary damages alone.

## Comparator Context (Selective Enforcement Evidence Relevant to Equities and Intent)

22. Within Plaintiff's subdivision and along the route to Plaintiff's cul-de-sac, numerous similarly situated homes routinely keep exterior items such as trash cans, grills, and yard/gardening equipment in view for extended periods.

23. Based on Plaintiff's observations, at least approximately 25% of households in the neighborhood keep trash receptacles outside, and numerous homes keep grills and other exterior items outside in a manner similar to what was alleged at Plaintiff's Property.

24. Upon information and belief, similarly situated properties in the same neighborhood maintain exterior items such as trash receptacles, grills, and yard equipment without comparable enforcement escalation or citation threats, supporting the reasonableness of Plaintiff's requested accommodation and the need for consistent accommodation procedures.

25. These facts are alleged as context supporting Plaintiff's request for narrowly tailored injunctive relief, the reasonableness of the requested accommodation, and the County's refusal to engage in a uniform, ADA/FHA-compliant process, not as a standalone equal protection claim in this pleading.

## IV. CLAIMS FOR RELIEF

## COUNT I — ADA TITLE II (42 U.S.C. § 12132)

26. Plaintiff incorporates paragraphs 1–25.

27. Plaintiff is a qualified individual with a disability.

28. Cobb County administers services, programs, and activities, including code enforcement and related regulatory functions.

29. The ADA and its implementing regulations require public entities to make reasonable modifications to policies, practices, or procedures when necessary to avoid discrimination on the basis of disability, unless the

entity can demonstrate that the modification would fundamentally alter the nature of the service, program, or activity. 42 U.S.C. § 12132; 28 C.F.R. § 35.130(b)(7)(i).

30. Cobb County discriminated against Plaintiff by refusing to meaningfully evaluate Plaintiff's time-only accommodation request and by conditioning relief on disability-impairing physical exertion, thereby denying Plaintiff an equal opportunity to access and benefit from County-administered enforcement procedures.

31. Plaintiff is entitled to declaratory and injunctive relief for Title II violations. See Silva v. Baptist Health S. Fla., Inc., 856 F.3d 824, 831 (11th Cir. 2017).

32. Plaintiff is entitled to compensatory damages because Cobb County acted with intentional discrimination, demonstrated by deliberate indifference. See Silberman v. Miami Dade Transit, 927 F.3d 1123, 1134–35 (11th Cir. 2019); Liese v. Indian River Cnty. Hosp. Dist., 701 F.3d 334, 344–48 (11th Cir. 2012).

33. Cobb County had actual knowledge of Plaintiff's disability and accommodation request through written communications but failed to take reasonable steps to evaluate or implement a lawful accommodation process. This failure, despite knowledge of a substantial likelihood of harm to Plaintiff's federally protected rights, constitutes deliberate indifference.

## COUNT II — FHA REASONABLE ACCOMMODATION (42 U.S.C. § 3604(f)(3)(B))

34. Plaintiff incorporates paragraphs 1–25.

35. Plaintiff is disabled within the meaning of the FHA.

36. Plaintiff requested a reasonable accommodation (a time-only compliance schedule) necessary to afford an equal opportunity to use and enjoy the dwelling.

37. Cobb County refused the accommodation and failed to conduct a meaningful review. A refusal may be shown by outright denial or by imposing unreasonable conditions that function as denial. See Bhogaita v.

Altamonte Heights Condo. Ass'n, 765 F.3d 1277, 1285–87 (11th Cir. 2014);

Schwarz v. City of Treasure Island, 544 F.3d 1201, 1218–19 (11th Cir. 2008).

38. Plaintiff has incurred and will continue to incur medical expenses, diagnostic costs, physician treatment, physical therapy, pain management treatment, and other healthcare services associated with aggravation of Plaintiff's lumbar condition and radiculopathy.

## COUNT III — FHA INTERFERENCE / COERCION (42 U.S.C. § 3617)

39. Plaintiff incorporates paragraphs 1–25.

40. Cobb County's conduct, including refusal to consider a requested accommodation and conditioning relief on disability-impairing exertion under threat of citation, constitutes coercion, interference, and intimidation with Plaintiff's exercise or enjoyment of rights protected by the Fair Housing Act. 42 U.S.C. § 3617.

As a direct and proximate result of Defendant's actions and omissions, Plaintiff has suffered physical injury, aggravation of pre-existing spinal

pathology, persistent left-sided radiculopathy with sciatic pain, emotional distress, loss of enjoyment of life, interference with the use and enjoyment of his home, past and future medical expenses, and other actual damages the full extent of which continues to develop.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Declare that Cobb County's refusal to meaningfully evaluate Plaintiff's accommodation request violates ADA Title II and the FHA;

B. Enter preliminary and permanent injunctive relief prohibiting enforcement action related to the accommodation request unless and until Defendant conducts a lawful ADA/FHA accommodation review and provides a reasonable compliance schedule;

C. Award Plaintiff actual and compensatory damages, including damages for physical injury, pain and suffering, emotional distress, loss of

enjoyment of life, interference with the use and enjoyment of his home, and past and future medical expenses, in an amount to be determined by the jury but believed to exceed $2,000,000;

D. Award Plaintiff litigation expenses, costs, and attorney's fees, where authorized, including under 42 U.S.C. § 12205 and 42 U.S.C. § 3613(c)(2); and

E. Grant such other and further relief as the Court deems just and proper.

## VI. JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

**Seth Rusek**

2153 Spencer Court

Marietta, GA 30066

678.585.2893

sethrusek@gmail.com

# EXHIBIT INDEX

Exhibit A — Plaintiff accommodation request email dated January 12, 2026.

Exhibit B — County email dated January 13, 2026 stating "We do not make accommodations on the ordinance."

Exhibit C — Plaintiff email dated January 20, 2026 clarifying progress and requesting time-only accommodation.

Exhibit D — County email dated January 20, 2026 describing inspection and compliance expectations.

Exhibit E — County email dated February 18, 2026 stating citations will issue beginning March 5, 2026.

Exhibit F — Photographs showing driveway conditions and exterior items.

Exhibit G —  MRI reports / imaging records dated April 11, 2025 and March 6, 2026



## RESPONSE TO NOTICE & FORMAL REQUEST FOR REASONABLE ACCOMMODATION
1 message

**Seth R** <sethrusek@gmail.com>                                        Mon, Jan 12, 2026 at 4:48 PM
To: danny.harrell@cobbcounty.gov, codeenforcement@cobbcounty.gov

Attached please find the property owner's response to the Notice of Violation and formal reasonable accommodation request under the Fair Housing Act and ADA Title II. Please confirm receipt and routing to the appropriate reviewer.


(Fair Housing Act & ADA Title II)
Via Certified Mail and Email

Cobb County Code Enforcement
Cobb County Community Development Agency
100 Cherokee Street, Suite 350
Marietta, Georgia 30090

Re: Response to Notice of Violation & Request for Reasonable Accommodation
Property: 2153 Spencer Court, Cobb County, Georgia
Referenced Code Sections: §§ 134-272(6)(c); 134-198(12)(e); 134-277(a)–(f)

I. INTRODUCTION AND STATUS UPDATE
This correspondence serves as both a timely response to the referenced Notice of Violation and a formal request for a reasonable accommodation pursuant to the Fair Housing Act (42 U.S.C. § 3604(f)) and Title II of the Americans with Disabilities Act (42 U.S.C. § 12132).

The response is submitted within the County's stated 10-day timeframe.

Compliance Update
To address the County's concerns in good faith and without waiving any rights:

The collector vehicle previously located on the street will be relocated to the driveway; and a properly tagged, insured, operable vehicle will be placed on the street in its stead.

This action resolves any concern related to the street placement of an untagged vehicle, while preserving lawful residential vehicle use.

II. DISABILITY STATUS (FUNCTIONAL LIMITATIONS)
The occupant of the property is an individual with permanent physical impairments that substantially limit major life activities, including:

Walking and standing
Lifting, bending, and twisting
Repetitive or physically strenuous movement

Compliance actions that require frequent vehicle movement, re-positioning, or physical exertion cause significant pain and risk further injury.

This request is based on functional limitations, not diagnoses. Medical verification addressing functional capacity can be provided if necessary to evaluate this request.

III. PROPERTY CONTEXT AND LACK OF PUBLIC IMPACT
The following facts are relevant and undisputed:

The residence is located at the rear of a cul-de-sac.

There are no traffic, safety, health, or environmental concerns.

There is no commercial activity

No obstruction of sidewalks, rights-of-way, or easements.

Items present outdoors are ordinary residential appurtenances, not materials accumulated for storage.

No ordinance has been identified that prohibits pine straw or similar ground covering on a private driveway, if that is a concern.

Any remaining enforcement concern is therefore non-safety-related and limited, at most, to aesthetic considerations.

IV. RESPONSE TO CITED CODE SECTIONS
Without conceding applicability or violation, the following clarifications are offered to assist in resolution:

A. § 134-272(6)(c) and § 134-198(12)(e)
These provisions address outside storage in residential districts.

The property does not contain stored materials, goods, parts, or equipment maintained outdoors as a place of storage.
Items present outdoors consist solely of ordinary residential items in active use, which do not constitute "outside storage" as that term is used in the zoning code.
B. § 134-277(a)–(f)
These provisions regulate vehicle placement and conditions.

No abandoned, dismantled, or unsafe vehicles are present.
Vehicles are operable and maintained.

The only untagged vehicle is stored on private property and is not operated on public streets, which is consistent with state law and zoning authority.

V. REQUESTED REASONABLE ACCOMMODATIONS
To ensure equal use and enjoyment of the dwelling and avoid medically harmful burdens, the following reasonable accommodations are requested. Approval of any one or more would fully address the County's concerns:

Confirmation that the current vehicle configuration (collector vehicle on driveway; tagged vehicle on street) satisfies County requirements;

Extended or flexible compliance expectations regarding vehicle placement and incidental outdoor items, consistent with the occupant's physical limitations;

Approval of alternative compliance measures, if any are deemed necessary, that do not require repetitive physical exertion or frequent vehicle relocation; and/or

Written confirmation that the property does not present a safety, health, or environmental condition requiring further enforcement action.

These accommodations are reasonable, impose no undue burden on the County, and do not undermine any legitimate governmental interest.

VI. INTERACTIVE PROCESS AND STAY OF ENFORCEMENT
Federal law requires an individualized, interactive process when evaluating this request. Accordingly, no further enforcement action should occur while this request is under review.

VII. NON-WAIVER
This response and request are submitted in good faith and without waiver of any rights, remedies, or defenses under federal, state, or local law.

Respectfully submitted,


Seth Rusek
Property Owner
2153 Spencer Court
Marietta, GA 30066



## RESPONSE TO NOTICE & FORMAL REQUEST FOR REASONABLE ACCOMMODATION
1 message

**CodeEnforcement** <CodeEnforcement@cobbcounty.gov>                    Tue, Jan 20, 2026 at 10:28 AM
To: Seth R <sethrusek@gmail.com>, CodeEnforcement <CodeEnforcement@cobbcounty.gov>
Cc: Harrell, Danny <Danny.Harrell@cobbcounty.gov>

Good morning,

The officer is scheduled to inspect the property sometime next week. All vehicles must display a current tag if outside of the garage, all items must be stored within an enclosed structure such as a garage or shed, and pine straw/ leaves are not violations. Although you may not be able to see the violation from the street the ordinance still applies and the property must be in compliance. Officer Harrell will come out for an inspection to check progress. Once he observes the progress he will give you an extension to get the vehicle in compliance or removed. Have a great day.

[Quoted text hidden]



**RESPONSE TO NOTICE & FORMAL REQUEST FOR REASONABLE ACCOMMODATION**

1 message

**CodeEnforcement** <CodeEnforcement@cobbcounty.gov>                    Tue, Jan 13, 2026 at 5:17 AM
To: Seth R <sethrusek@gmail.com>, Harrell, Danny <Danny.Harrell@cobbcounty.gov>, CodeEnforcement
<CodeEnforcement@cobbcounty.gov>

Good morning,


The property is in violation of having vehicles without tags, parking on the grass and storing items outside. We do not make accommodations on the ordinance but you can contact zoning to apply for a land use permit and request for the board to give you permission. When going before the board it is not guaranteed that your request will be approved but the board will hear your concerns and make a decision. If you are wanting time to comply yes we will work with you and give an extension as long as effort is observed. Please feel free to let us know if you have any other concerns. Have a wonderful day.


Thank you


**Yolisa Foston**

**Code Enforcement Supervisor**

**Cobb County Community Development**

**770-528-2208**

[Quoted text hidden]



## RESPONSE TO NOTICE & FORMAL REQUEST FOR REASONABLE ACCOMMODATION
1 message

**Seth R** <sethrusek@gmail.com>                                    Tue, Jan 20, 2026 at 10:10 AM
To: CodeEnforcement <CodeEnforcement@cobbcounty.gov>
Cc: Harrell, Danny <Danny.Harrell@cobbcounty.gov>

Good morning Ms. Foston,

Thank you for your response. I appreciate your willingness to work with me regarding additional time to comply.

I want to clarify the current conditions at the property so the file accurately reflects the facts:

1.  Any trash or loose items previously present have been removed.
2.  There has been no parking on grass and no violation involving lack of a hardened surface; all vehicles are on the driveway with adequate clearance to the edges and sufficient hardened surface in front of the vehicles.  Pinestraw is on top of the hardened surface, but that is fine and causes no issues for the county nor anyone else.
3.  Nothing is visible from the street; one would have to stop and leave the roadway to see anything on the property.
4.  There is no ordinance, to my knowledge, prohibiting seasonal accumulation of pine straw or leaves on a private driveway.

With respect to the collector vehicle, it has not yet been moved solely due to the homeowner's significant medical limitations, including severe spinal, knee, and shoulder conditions, which have already resulted in injury when attempting to lift or move items for the effort already exerted so far. This is especially difficult during winter conditions.

I am not refusing compliance and I am actively arranging for assistance so the vehicle can be relocated safely into my driveway without injury to myself or vehicle, as the car is so low it can't clear the cobb county driveway cut without damaging it and the sole reason for it being parked on the street.

I respectfully request a reasonable time extension to allow this to occur without further injury. This request is limited to time only and does not seek a waiver of the ordinance.

You indicated that an extension may be granted so long as effort is observed. To that end, please confirm that:

1.  The County will allow a reasonable extension of time for the collector vehicle to be moved, and
2.  Compliance will be evaluated based on objective progress (e.g., arranging assistance), not on immediate physical exertion, even though that has been done to my detriment already.

I believe this resolves the matter without the need for zoning or board involvement, which would be legally improper based on all ordinances/rules/laws that I'm aware of, and appreciate your cooperation.

Thank you again, and I look forward to your confirmation.

Respectfully,

Seth Rusek

[Quoted text hidden]



# RESPONSE TO NOTICE & FORMAL REQUEST FOR REASONABLE ACCOMMODATION
1 message

**Harrell, Danny** <Danny.Harrell@cobbcounty.gov>                              Wed, Feb 18, 2026 at 10:52 AM
To: Seth R <sethrusek@gmail.com>

Please Remove the Items other than Firewood and Lawn Furnishing from outside of the property and all Vehicles parked on the property must have current state tags on them... There are two Vehicles on the property that do not have current state tags.  As of Feb 18, 2026, the Violations are still on the property.. If the Violations are not removed by March 5, 2026, Citations will be issued.

**From:** Seth R <sethrusek@gmail.com>
**Sent:** Monday, January 12, 2026 4:49 PM
**To:** Harrell, Danny <Danny.Harrell@cobbcounty.gov>; CodeEnforcement <CodeEnforcement@cobbcounty.gov>
**Subject:** RESPONSE TO NOTICE & FORMAL REQUEST FOR REASONABLE ACCOMMODATION

Attached please find the property owner's response to the Notice of Violation and formal reasonable accommodation request under the Fair Housing Act and ADA Title II. Please confirm receipt and routing to the appropriate reviewer.

(Fair Housing Act & ADA Title II)

Via Certified Mail and Email

March

[Quoted text hidden]





790 Church Street, Suite 105
Marietta, GA 30060
Phone: 470.462.0134   |   Fax: 470.462.2444

1.5T High-field MRI, X-Ray

| | | | |
|---|---|---|---|
| **Patient Name:** | Seth Rusek | **Referring Physician:** | Robert Springer |
| **Patient ID:** | 1339043 | **Referring Phone:** | 4049206201 |
| **Patient DOB:** | ▓▓▓▓ | **Referring Fax:** | 4049206205 |
| **DOS:** | 03/06/2026 | | |

View images in portal: https://reports.eliteradga.com

**EXAMINATION:    MRI LUMBAR WITHOUT CONTRAST**

CLINICAL HISTORY. Recurrent pain.

TECHNIQUE. Multisequence T1 and T2 weighted images were obtained.

FINDINGS:

At L1-2: Broad based posterocentral protrusion type disc herniation causing anterior impression over the thecal sac and elevating the posterior longitudinal ligament. No spinal stenosis or neural foraminal narrowing. This is seen on axial T2 image #3 and sagittal T2 image #11.

At L2-3: Asymmetric disc bulge causing anterior impression over the thecal sac and elevating the posterior longitudinal ligament and causing mild right and moderate left neural foraminal narrowing. Mild spinal canal stenosis is seen. This is seen on sagittal T2 image #11.

At L3-4: Disc bulge with posterocentral protrusion type disc herniation causing anterior impression over the thecal sac and elevating the posterior longitudinal ligament and along with bordering spurs and facetal hypertrophy is causing severe bilateral neural foraminal narrowing. Moderate spinal canal stenosis is seen. This is seen on axial T2 image #13 and sagittal T2 image #11.

At L4-5: Disc bulge causing anterior impression over the thecal sac and elevating the posterior longitudinal ligament and causing moderate right neural foraminal narrowing. Mild spinal canal stenosis is seen. This is seen on sagittal T2 image #11.

At L5-S1: Disc bulge with posterior protrusion type disc herniation causing anterior impression over the thecal sac and along with facetal hypertrophy is causing mild right and moderate left neural foraminal narrowing. Mild spinal canal stenosis is seen. This is seen on axial T2 image #23 and sagittal T2 image #11.

Lumbar lordosis is maintained with mild dextroscoliosis. Grade I retrolisthesis is seen at L4-L5 and L5-S1 levels. Marrow edema/Modic type I end plate changes are seen at L3-L4 level. All the other vertebrae in view show normal heights and marrow signals. Schmorl's nodes are seen at multiple levels. Marginal spurring with disc desiccation is seen at multiple levels.

Conus and descending nerve roots of cauda equina appear normal.

IMPRESSION.

1.    Mild lumbar dextroscoliosis.
2.    Grade I retrolisthesis at L4-L5 and L5-S1 levels.
3.    At L1-2: Broad based posterocentral protrusion type disc herniation causing anterior impression over the thecal sac and elevating the posterior longitudinal ligament. No spinal stenosis or neural foraminal narrowing. This is seen on axial T2 and sagittal T2 image #11.
4.    At L2-3: Asymmetric disc bulge causing anterior impression over the thecal sac and elevating the posterior longitudinal ligament and causing mild right and moderate left neural foraminal narrowing. Mild spinal canal stenosis. This is seen on sagittal T2 image #11.



**RADIOLOGY OF GEORGIA**

790 Church Street, Suite 105
Marietta, GA 30060
Phone: 470.462.0134   |   Fax: 470.462.2444

**1.5T High-field MRI, X-Ray**

| | | | |
|---|---|---|---|
| **Patient Name:** | Seth  Rusek | **Referring Physician:** | Robert Springer |
| **Patient ID:** | 1339043 | **Referring Phone:** | 4049206201 |
| **Patient DOB:** | ▬▬▬▬ | **Referring Fax:** | 4049206205 |
| **DOS:** | 03/06/2026 | | |

View images in portal: https://reports.eliteradga.com

**EXAMINATION:    MRI LUMBAR WITHOUT CONTRAST**

5.    At L3-4: Disc bulge with posterocentral protrusion type disc herniation causing anterior impression over the thecal sac and elevating the posterior longitudinal ligament and along with bordering spurs and facetal hypertrophy causing severe bilateral neural foraminal narrowing. Moderate spinal canal stenosis. This is seen on axial T2 image #13 and sagittal T2 image #11.

6.    At L4-5: Disc bulge causing anterior impression over the thecal sac and elevating the posterior longitudinal ligament and causing moderate right neural foraminal narrowing. Mild spinal canal stenosis. This is seen on sagittal T2 image #11.

7.    At L5-S1: Disc bulge with posterior protrusion type disc herniation causing anterior impression over the thecal sac and along with facetal hypertrophy causing mild right and moderate left neural foraminal narrowing. Mild spinal canal stenosis. This is seen on axial T2 image #23 and sagittal T2 image #11.

**Chintan Desai MD**
Board Certified
mricases@gmail.com

Electronically signed on: 03/07/2026 06:02
Transcribed by:  on:



**RADIOLOGY OF GEORGIA**

790 Church Street, Suite 105
Marietta, GA 30060
Phone: 470.462.0134   |   Fax: 470.462.2444

1.5T High-field MRI, X-Ray

| | | | |
|---|---|---|---|
| **Patient Name:** | Seth  Rusek | **Referring Physician:** | Robert Springer |
| **Patient ID:** | 1339043 | **Referring Phone:** | 4049206201 |
| **Patient DOB:** | | **Referring Fax:** | 4049206205 |
| **DOS:** | 03/06/2026 | | |

View images in portal: https://reports.eliteradga.com

**EXAMINATION:**   MRI LUMBAR WITHOUT CONTRAST



790 Church Street, Suite 105
Marietta, GA 30060
Phone: 470.462.0134   |   Fax: 470.462.2444

1.5T High-field MRI, X-Ray

| | | | |
|---|---|---|---|
| **Patient Name:** | Seth Rusek | **Referring Physician:** | Robert Springer |
| **Patient ID:** | 1339043 | **Referring Phone:** | 4049206201 |
| **Patient DOB:** | ███████ | **Referring Fax:** | 4049206205 |
| **DOS:** | 04/11/2025 | | |

View images in portal: https://reports.eliteradga.com

**EXAMINATION:    MRI LUMBAR WITHOUT CONTRAST**

INDICATION: The patient complains of severe back pain and is unable to ambulate or stand up without medication. The patient has a history of congenital spina bifida and surgery to repair a herniation in 2017. ICD-10: M54.28.

TECHNIQUE: Sagittal T1 and T2-weighted images were acquired. A set of para-axial T2-weighted images was acquired through the lumbar spine intervertebral discs without gadolinium contrast. For the purposes of this dictation only, there will be the presumption of five lumbar-configured vertebrae.

FINDINGS: There is dextroscoliosis of the lumbar spine with an axis at L3. The conus medullaris terminates at the level of intervertebral disc space at T12-L1 and there is a posterior bulge of the disc at this level indenting the ventral aspect of the thecal sac. The paravertebral musculature is normal in MRI appearance. The visualized portions of the abdominal aorta are normal in caliber. The vertebral body heights are maintained. There is desiccation of the discs.

At L5-S1, there is a posterolateral to the left herniation of the disc with moderate left and mild right stenosis.

At L4-L5, there is a posterior bulge of the disc with mild bilateral neural foraminal narrowing.

At L3-L4, there are Modic type II changes, anterior spurring, irregularity of the endplates, and a posterior herniation of the disc with severe left and moderate right stenosis.

At L2-L3, there is anterior spurring and a posterior bulge of the disc with mild right neural foraminal narrowing.

At L1-L2, there is no neural foraminal narrowing or central spinal canal stenosis.

At T12-L1, there is no neural foraminal narrowing or central spinal canal stenosis.

IMPRESSION:

DEXTROSCOLIOSIS WITH AN AXIS AT L3-L4 WITH GRADE 1 LATERAL TO THE LEFT LISTHESIS OF L3 ON L4.

AT L5-S1, THERE IS A POSTEROLATERAL TO THE LEFT HERNIATION OF THE DISC WITH MODERATE LEFT AND MILD RIGHT STENOSIS.

AT L4-L5, THERE IS A POSTERIOR BULGE OF THE DISC WITH MILD BILATERAL NEURAL FORAMINAL NARROWING.

AT L3-L4, THERE ARE MODIC TYPE II CHANGES, ANTERIOR SPURRING, IRREGULARITY OF THE ENDPLATES, AND A POSTERIOR HERNIATION OF THE DISC WITH SEVERE LEFT AND MODERATE RIGHT STENOSIS.

AT L2-L3, THERE IS ANTERIOR SPURRING AND A POSTERIOR BULGE OF THE DISC WITH MILD RIGHT NEURAL FORAMINAL NARROWING.



790 Church Street, Suite 105
Marietta, GA 30060
Phone: 470.462.0134   |   Fax: 470.462.2444

1.5T High-field MRI, X-Ray

| | | | |
|---|---|---|---|
| **Patient Name:** | Seth Rusek | **Referring Physician:** | Robert Springer |
| **Patient ID:** | 1339043 | **Referring Phone:** | 4049206201 |
| **Patient DOB:** | ████████ | **Referring Fax:** | 4049206205 |
| **DOS:** | 04/11/2025 | | |

View images in portal: https://reports.eliteradga.com

**EXAMINATION:**     MRI LUMBAR WITHOUT CONTRAST

NO ACUTE FRACTURE OF THE LUMBAR SPINE IS IDENTIFIED.

**Doug Hornsby MD**

doughornsby@msn.com

Electronically signed on: 04/13/2025 07:35
Transcribed by: Ruel, Eileen on: 04/12/2025 20:44

=========================================================================================

ELITE RADIOLOGY OF GA-MARIETTA

Patient Name: SETH RUSEK
Birth Date: ███████

Referring Doctor: SPRINGER, ROBERT
Reading Doctor: HORNSBY, DOUGLAS
Visit No.: 2931433
Order No.: 2817968
Exam Date: 4/11/2025
Exam: 72148 - MRI LUMBAR SPINE W/O CONTRAST
=========================================================================================

Procedure Code: 72148

FINAL REPORT

EXAM DESCRIPTION: MRI LUMBAR WITHOUT CONTRAST

INDICATION:  The patient complains of severe back pain and is unable to ambulate or stand up without medication. The patient has a history of congenital spina bifida and surgery to repair a herniation in 2017.  ICD-10: M54.28.

TECHNIQUE: Sagittal T1 and T2-weighted images were acquired.  A set of para-axial T2-weighted images was acquired through the lumbar spine intervertebral discs without gadolinium contrast.  For the purposes of this dictation only, there will be the presumption of five lumbar-configured vertebrae.

FINDINGS:  There is dextroscoliosis of the lumbar spine with an axis at L3.  The conus medullaris terminates at the level of intervertebral disc space at T12-L1 and there is a posterior bulge of the disc at this level indenting the ventral aspect of the thecal sac.
The paravertebral musculature is normal in MRI appearance.  The visualized portions of the abdominal aorta are normal in caliber.  The vertebral body heights are maintained. There is desiccation of the discs.

At L5-S1, there is a posterolateral to the left herniation of the disc with moderate left and mild right stenosis.

At L4-L5, there is a posterior bulge of the disc with mild bilateral neural foraminal narrowing.

At L3 L4, there are Modic type II changes, anterior spurring, irregularity of the endplates, and a posterior herniation of the disc with severe left and moderate right stenosis.

At L2-L3, there is anterior spurring and a posterior bulge of the disc with mild right neural foraminal narrowing.

At L1-L2, there is no neural foraminal narrowing or central spinal canal stenosis.

At T12-L1, there is no neural foraminal narrowing or central spinal canal stenosis.

IMPRESSION:

DEXTROSCOLIOSIS WITH AN AXIS AT L3-L4 WITH GRADE 1 LATERAL TO THE LEFT LISTHESIS OF L3 ON L4.

AT L5-S1, THERE IS A POSTEROLATERAL TO THE LEFT HERNIATION OF THE DISC WITH MODERATE LEFT AND MILD RIGHT STENOSIS.

AT L4-L5, THERE IS A POSTERIOR BULGE OF THE DISC WITH MILD BILATERAL NEURAL FORAMINAL NARROWING.

AT L3-L4, THERE ARE MODIC TYPE II CHANGES, ANTERIOR SPURRING, IRREGULARITY OF THE ENDPLATES, AND A POSTERIOR HERNIATION OF THE DISC WITH SEVERE LEFT AND MODERATE RIGHT STENOSIS.

AT L2-L3, THERE IS ANTERIOR SPURRING AND A POSTERIOR BULGE OF THE DISC WITH MILD RIGHT NEURAL FORAMINAL NARROWING.

NO ACUTE FRACTURE OF THE LUMBAR SPINE IS IDENTIFIED.

Doug Hornsby MD

doughornsby@msn.com

24-Jun-2025  06:37    Assist Health Group                    19729183337              p.2
NFINX DATE:6/16/2025, 1:32 PM PDT TO: +18478472888 FROM: 14086763882 PAGE 5/6

Electronically signed on: 04/13/2025 07:35

Transcribed by: Ruel, Eileen on:  04/12/2025 20:44

"